UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 09-CR-0312(4) (PJS/FLN) |
| Plaintiff, | |
| v. | ORDER |
| NATHAN LAMAR STEWART, | |
| Defendant. | |

Defendant Nathan Lamar Stewart is serving a 204-month sentence after pleading guilty to aiding and abetting bank robbery and possessing a firearm during a crime of violence. This matter is before the Court on Stewart's motion for compassionate release[1] under 18 U.S.C. § 3582(c)(1)(A)(i).[2] ECF No. 322. For the reasons that follow, Stewart's motion is denied.

Under § 3582(c)(1)(A)(i), a court may reduce a defendant's term of imprisonment if, "after considering the factors set forth in section 3553(a) to the extent that they are

---

[1]In some parts of his motion, Stewart requests release to home confinement. *See* ECF No. 322 at 1. However, only the Bureau of Prisons—not this Court—has the authority to place Stewart on home confinement. *See United States v. Fletcher*, No. 13-CR-0034 (PJS/JJK), 2021 WL 487552, at *1 n.2 (D. Minn. Feb. 10, 2021). The Court therefore construes Stewart's request as seeking a sentence reduction.

[2]In a letter dated March 9, 2021, Stewart asked the Court to pause all activity on his motion so that he could request release from the new warden at USP Thomson. ECF No. 323. Stewart now reports that he has exhausted his remedies, ECF No. 325-2 at 6–8, and he has filed supplemental materials, ECF Nos. 324–326, which the Court has fully considered.

applicable," the court finds that "extraordinary and compelling reasons warrant such a reduction" and "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]" The Sentencing Commission has issued U.S.S.G. § 1B1.13, a policy statement that governs motions under § 3582(c)(1)(A). Section 1B1.13 was issued when the Bureau of Prisons had the sole authority to bring motions for release under § 3582(c)(1)(A). Unfortunately, § 1B1.13 has not been updated to reflect that, as a result of the 2018 First Step Act, defendants now have the ability to bring such motions directly.

This anomaly has given rise to a debate concerning whether and to what extent § 1B1.13 applies to motions filed by defendants, with several circuits recently holding that § 1B1.13 applies only to motions filed by the Bureau of Prisons, and not to motions filed by defendants on their own behalf. *See United States v. McGee*, 992 F.3d 1035, 1050 (10th Cir. 2021); *United States v. McCoy*, 981 F.3d 271, 280–84 (4th Cir. 2020); *United States v. Jones*, 980 F.3d 1098, 1108–11 (6th Cir. 2020); *United States v. Gunn*, 980 F.3d 1178, 1180–81 (7th Cir. 2020); *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020). The Eighth Circuit has not yet addressed this issue. For reasons that this Court has explained at length in a prior order, this Court finds that "§ 1B1.13 does not apply to motions for compassionate release filed by defendants," but that "§ 1B1.13's definition of 'extraordinary and compelling' should be afforded substantial deference when a

court considers compassionate-release motions filed by defendants." *United States v. Logan*, No. 97-CR-0099(3) (PJS/RLE), 2021 WL 1221481, at *4 (D. Minn. Apr. 1, 2021).

Stewart gives a few reasons for why he should be released, but those reasons are not extraordinary and compelling. First, Stewart previously contracted COVID-19 and says that he fears becoming reinfected. But the facility at which he is incarcerated (USP Thomson) currently does not have a single inmate or staff member who is infected with COVID-19, and 210 staff and 447 inmates have been fully vaccinated.[3] If Stewart has not yet been vaccinated, he will likely be vaccinated soon. And because Stewart has already been infected, he has natural immunity, which greatly reduces his risk of being reinfected even if he has not yet been immunized. In short, the chances that Stewart will be reinfected—and the chances that he will become seriously ill or die[4] if he is

---

[3]Federal Bureau of Prisons, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/index.jsp (last visited May 6, 2021).

[4]Stewart says he is mentally ill and pre-diabetic, but neither of those conditions increase the risk of serious consequences from COVID-19. *See* Ctrs. for Disease Control and Prevention, *People with Certain Medical Conditions*, (Apr. 29, 2021) https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. Stewart also says he has high blood pressure. That condition can increase the risk of illness from COVID-19, *id.*, but high blood pressure alone does not provide an extraordinary and compelling reason to release an inmate, especially when the chances of the inmate being reinfected are very small, *see United States v. Robinson*, No. 19-CR-0143 (PJS/BRT), 2021 WL 528002, at *3 (D. Minn. Feb. 12, 2021).

reinfected—are extremely small.⁵ *See, e.g.*, *United States v. Anguiano*, No. 17-CR-0135(1) ADM/DTS, 2021 WL 1577650, at *4 (D. Minn. Apr. 22, 2021); *United States v. Scott*, No. 11-CR-0144 (DWF), 2021 WL 827644, at *3 (D. Minn. Mar. 4, 2021).

Stewart also contends that USP Thomson provides inadequate medical care.⁶ He gives several examples: (1) after he contracted COVID-19, he was given acetaminophen, while those outside of prison are prescribed drugs like remdesivir; (2) medical staff are ignoring his post-COVID-19 symptoms; (3) he received poor medical care after two assaults; and (4) there was no mental-health support after the deaths of his two children and their mother. But a § 3582 motion is not a proper vehicle for raising constitutional challenges to conditions of confinement; instead, if Stewart wishes to challenge the conditions of his confinement, he must do so in a *Bivens* action filed in the federal district in which he is confined. *See United States v. Spencer*, No. 07-CR-0174(1) (JRT/JJG), 2021 WL 849565, at *1 n.1 (D. Minn. Mar. 5, 2021) (declining to

---

⁵*See* Ctrs. for Disease Control and Prevention, *Reinfection with COVID-19*, (Oct. 27, 2020) https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html.

⁶Stewart argues that prison officials confined him with his COVID-19-infected cellmate, causing Stewart to contract the disease. If Stewart seeks to pursue a tort claim, he must file an action under the Federal Tort Claims Act. *See United States v. Spencer*, No. 07-CR-0174(1) (JRT/JJG), 2021 WL 849565, at *1 n.1 (D. Minn. Mar. 5, 2021) (rejecting tort claims brought in a § 3582 motion).

consider constitutional claims in a § 3582 motion because they must be "made in a properly filed *Bivens* complaint").[7]

Putting that aside, Stewart's medical records contradict his claim that he has received inadequate health care. His records indicate that, like many people who contracted COVID-19, Stewart was asymptomatic and did not need additional medications to manage the infection. ECF No. 322-2 at 2. His records also make clear that medical staff are not ignoring his concerns about lingering COVID-19 symptoms, as they ordered an x-ray of his chest after he complained of shortness of breath. *Id.* at 3. (The x-ray revealed no problems.) His records also confirm that he received medical treatment after both assaults. ECF No. 326 at 2–3, 8–9. And finally, his records reflect that Stewart told prison officials that he had no psychological concerns, undercutting his complaint about the lack of mental-health services.[8] *Id.* at 1. As a result, even if the Court were to allow Stewart to use a compassionate-release request to challenge the conditions of his confinement, the Court would find that the quality of the medical care

---

[7]*See also United States v. Howard*, No. 14-CR-99-1-JPS, 2021 WL 1515485, at *2 (E.D. Wis. Apr. 16, 2021); *United States v. Partida*, No. CR-17-08260-001-PCT-DGC, 2020 WL 3050705, at *6 n.7 (D. Ariz. June 8, 2020); *United States v. Rodriguez-Collazo*, No. 14-CR-00378-JMY, 2020 WL 2126756, at *3 (E.D. Pa. May 4, 2020); *United States v. Numann*, No. 3:16-cr-00065-TMB, 2020 WL 1977117, at *4 (D. Alaska Apr. 24, 2020).

[8]Stewart alleges that prison officials lied about when he recovered from COVID-19 and suppressed his administrative grievances. Even if true, the Court would not find either action to provide an extraordinary and compelling reason for Stewart's release.

that Stewart is receiving does not provide an extraordinary and compelling reason for his release. *See United States v. Neubert*, No. 14-CR-200S, 2021 WL 248008, at *6–7 (W.D.N.Y. Jan. 26, 2021); *United States v. Clemons*, No. 4:18CR610 HEA, 2020 WL 3429149, at *4 (E.D. Mo. June 23, 2020).

Stewart next notes that his parents are elderly and live alone, and several family members have diabetes, breathing problems, and heart issues. Stewart has not shown, however, that any of his family members are incapacitated or that he is the only available caregiver for them. *Cf.* U.S.S.G. § 1B1.13, cmt. n.1(C)(ii); *Anguiano*, 2021 WL 1577650, at *4. Stewart also argues that he is rehabilitated, has family support, and has plans for his life after release. These are all commendable developments, but they are common among prisoners; none are extraordinary and compelling. *See Logan*, 2021 WL 1221481, at *7–8. Finally, Stewart emphasizes that he has served about 70–75% of his sentence, but there is nothing extraordinary about the fact that a prisoner has a quarter of his sentence remaining. *See United States v. Hill*, No. 10-CR-0324(3), 2020 WL 7706990, at *2 (D. Minn. Dec. 29, 2020). In sum, none of Stewart's reasons for release—individually or collectively—are extraordinary and compelling.[9]

---

[9]Stewart reiterates factors that the Court already considered at the time of his sentencing (e.g., he did not cause physical harm to anyone during the robberies, he was abused as a child, and he has suffered mental illness since childhood), and he takes issue with the fact that a sentencing advocate did not speak on his behalf at the sentencing hearing. ECF No. 324-1. However, a § 3582 motion is not an avenue for a

(continued...)

Even if Stewart had shown an extraordinary and compelling reason, the 18 U.S.C. § 3553(a) factors would counsel against his release. Stewart participated in a string of armed bank robberies that terrorized innocent bank tellers and customers. PSR ¶¶ 9–21, 26. Stewart also has a serious and lengthy criminal history. Stewart's involvement in the criminal-justice system began at the age of 10 and continued up until the present offense. *Id.* ¶¶ 68–77. He committed multiple violent crimes, such as when he threatened his brother with a knife, sexually assaulted a female, knocked unconscious a staff member at a detention center, used a knife to rob his stepfather, and led police on a high-speed chase. *Id.* ¶¶ 69–73, 76–77. Stewart has also performed very poorly while on supervised release; in fact, he was on probation when he committed the armed bank robberies. *Id.* ¶ 79. Stewart's continued confinement is therefore necessary to reflect the seriousness of his offenses and protect the public. *See* § 3553(a)(2).[10]

---

[9](...continued)
prisoner to seek "a 'do-over' of his sentencing." *Logan*, 2021 WL 1221481, at *5. The Court also reminds Stewart that it gave him a sentence that was much lower than the sentence sought by the government—and, in fact, gave him a sentence at the bottom of the range recommended by the United States Sentencing Guidelines (after granting his motion for a downward departure).

[10]Stewart also requests appointment of a lawyer. ECF No. 322 at 5. His request is denied as moot.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT defendant's motion for release [ECF No. 322] is DENIED.

Dated: May 6, 2021

Patrick J. Schiltz
United States District Judge